Mike M. Arias, Esq. (SBN 115385)
Arnold C. Wang, Esq. (SBN 204431)
M. Anthony Jenkins, Esq. (SBN 171958)
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile:  (310) 861-0168

Steven D. Liddle, Esq.*
Laura L. Sheets, Esq.*
Matthew Z. Robb, Esq.*
*Pro hac vice* applications to be submitted
**LIDDLE SHEETS COULSON P.C.**
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile:  (313) 392-0025

*Attorneys for Plaintiffs and the Putative Class*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH PISCITELLI and LARA ZANZUCCHI, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARTINEZ REFINING COMPANY LLC,<br><br>    Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br><br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

1.      Plaintiffs Joseph Piscitelli and Lara Zanzucchi, on behalf of a putative class of their neighbors, bring this class action against Defendant Martinez Refinery Company LLC ("Defendant") for its release of noxious odors and dust into Plaintiffs' properties.

2.      Defendant operates the Martinez Refinery (the "Facility") located at 3485 Pacheco Boulevard, Martinez California, which is a high-conversion dual coking petroleum refinery that processes crude oil into gasoline and jet fuel.

3.      Defendant's Facility releases noxious off-site odors and dust into Plaintiffs' properties causing injury and damages through nuisance, trespass, and negligence.

**PARTIES**

4.      At all times relevant hereto, Plaintiff Joseph Piscitelli has resided at 1230 Veale Avenue, Martinez, CA. Plaintiff is a citizen of California.

5.      At all times relevant hereto, Plaintiff Lara Zanzucchi has resided at 2521 Leslie Avenue, Martinez, California. Plaintiff is a citizen of California.

6.      Defendant Martinez Refining Company LLC is a foreign limited liability company formed under the laws of the state of Delaware. Upon information and belief, Defendant's sole member is PBF Energy Western Region LLC, and its ultimate parent company is PBF Energy Inc. All three entities were formed under the laws of Delaware. PBF Energy Western Region LLC lists an address at 1 Sylvan Way, 2nd Floor, Parsippany, NJ 07054, and, upon information and belief, is a citizen of the State of New Jersey. PBF Energy Inc., the ultimate parent company of both Martinez Refining Company LLC and PBF Energy Western Region LLC, is a citizen of Delaware and New

Jersey, where it maintains its principal place of business at 1 Sylvan Way, 2nd Floor, Parsippany, NJ 07054. Defendant's California Registered Agent is CT Corporation System, which can be served at 330 N. Brand Blvd., Suite 700, Glendale, California 91203.

7.    Defendant, including its predecessors and agents, either constructed or directed the construction of the Facility and exercised control and ownership over the Facility at all relevant times hereto.

8.    Upon information and belief, Defendant and its agents have, at all times relevant hereto, designed, operated, and maintained the Martinez Refining Company Facility located at 3485 Pacheco Boulevard, Martinez California.

**JURISDICTION AND VENUE**

9.    Plaintiffs are citizens of California.

10.    Upon information and belief, Defendant is a citizen of New Jersey, where its sole member PBF Energy Western Region LLC is a citizen, with an address of 1 Sylvan Way, 2nd Floor, Parsippany, NJ 07054. No member of Martinez Refining Company LLC, or any member of its parent companies, is a citizen of California.

11.    This Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy greatly exceeds $75,000, exclusive of interests and costs, and there is a complete diversity of citizenship between the parties.

12.    Separately, and in addition to diversity jurisdiction under 28 U.S.C. § 1332(a)(1), this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA") pursuant to 28 U.S.C. § 1332(d)(2)(a). CAFA Jurisdiction is appropriate

because there are 100 or more putative class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and one or more members of the putative class is a citizen of a state different from any defendant.

13.    Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because the property that is the subject of this action is situated in this District.

## GENERAL ALLEGATIONS

14.    Defendant owns and operates an oil refinery located at 3485 Pacheco Boulevard, Martinez California on an 860-acre site, where it receives and processes crude oil and refines it into gasoline and jet fuel, which Defendant markets and sells independently to a variety of third-party customers.

15.    Defendant's Facility is surrounded by residential properties.

16.    Plaintiffs reside within 1 mile of the Facility's property boundary.

17.    Plaintiffs' properties have been, and continue to be, repeatedly invaded by noxious odors and dust.

18.    Through its industrial process, Defendant has, and continues to, unnecessarily and unreasonably cause substantial noxious odors and dust to be emitted off-site into Plaintiffs' homes and similarly situated neighboring residential properties in Martinez, California.

///

///

CLASS ACTION COMPLAINT

19.    The noxious odors and dust that have entered into Plaintiffs' properties originated from Defendant's Facility, as a result of Defendant's intentional and/or and negligent acts and/or omissions.

### Defendant's Industrial Process

20.    Defendant's Facility is a high-conversion, dual-coking refinery that produces approximately 157,000 barrels of gasoline and/or jet fuel per day.

21.    The Facility has a total tankage capacity of approximately 8.8 million barrels. Of this total, approximately 2.5 million barrels are allocated to crude oil storage with the remaining 6.3 million barrels allocated to intermediates and products.

22.    Defendant's Facility includes numerous major process units, including a Crude Distillation Unit with a capacity of approximately 157,000 barrels per stream day, a Vacuum Distillation Unit with a capacity of approximately 102,000 barrels per stream day, a Fluid Catalytic Cracking Unit  with a capacity of approximately 72,000 barrels per stream day, Hydrotreating Units with a capacity of approximately 268,000 barrels per stream day, an Alkylation Unit with a capacity of approximately 12,500 barrels per stream day, a Delayed Coking Unit with a capacity of approximately 25,500 barrels per stream day, a Flexi Coking Unit with a capacity of approximately 22,500 barrels per stream day, and an Isomerization Unit with a capacity of approximately 15,000 barrels per stream day.[1]

---

[1] https://investors.pbfenergy.com/~/media/Files/P/PBF-Energy-IR-V3/documents/annual-reports-and-proxy/pbf-energy-2022-annual-10k-report.pdf (last visited July 26, 2023).

CLASS ACTION COMPLAINT

23.    Petroleum coke, also known as "petcoke," is a solid carbon material created as a byproduct of the oil refining process.

24.    Defendant's Facility creates massive quantities of petcoke and other particulate materials that Defendant is under a duty to properly capture, control, mitigate, and dispose of as part of its industrial operations in order to prevent particulate emissions from traveling off-site through the ambient air and into neighboring properties.

25.    There are also various types of catalysts which are used in the petroleum industry, such as at Defendant's Facility. The major catalysts used in the industry are hydroprocessing catalysts (hydrocracking catalyst (zeolite) and hydrotreating catalyst), fluid catalytic cracking catalysts and catalytic reforming catalysts (platinum). These catalysts exist in solid-state. Another type of catalyst used in the refining process is the isomerization refining catalyst.[2]

26.    During the refining process of crude material, catalytic refiners—also known as refining catalyst or catalyst—get contaminated with impurities like coke, sulfur, vanadium, and nickel, and become deactivated over a period of time.

27.    Once catalysts become inactive, they are supposed to be captured and withdrawn from the refining process. At this stage, catalysts are considered "spent" and the precious metals, coke, and other poisonous elements make them hazardous waste.

28.    Defendant's Facility creates massive quantities of "spent catalyst," which Defendant has a duty to properly capture, manage, dispose, and/or recycle according to all legislated local and international regulatory agencies. Spent catalyst is designated by

---

[2] https://recognizedtrader.us/what-is-a-refining-catalyst/ (last visited July 26, 2023).

the U.S. EPA as hazardous waste and is accordingly highly noxious.[3] If not properly captured, managed, processed, disposed, and/or recycled spent catalyst can be released into the ambient air and invade neighboring properties.

29.    Defendant's Facility also involves receipt, handling, and processing of crude oil and other noxious materials that are highly odiferous and noxious if not properly handled, treated, processed, and controlled through air pollution control devices.

30.    Defendant's Facility also creates a substantial amount of wastewater, which if not properly treated, handled, and disposed, is noxious and highly odiferous.

31.    Defendant has a duty to properly handle, store, process, control, and mitigate its emissions to prevent noxious odors and dust from migrating off-site and into neighboring residential properties.

32.    Defendant also has a duty to properly handle, treat, and dispose of its waste materials and wastewater to prevent noxious odors from migrating off-site and into neighboring residential properties.

33.    In 2021, the Bay Area Air Quality Management District ("BAAQMD") adopted a new regulation that would require petroleum refineries, including Defendant, to reduce the amount of particulate pollution released from their fluid catalytic cracking units, the equipment that processes crude oil into finished products such as gasoline.

34.    However, instead of taking the necessary steps to comply with these regulations, and improve its particulate emission control systems, Defendant sued the BAAQMD to block implementation of the rule.

---

[3] https://archive.epa.gov/epawaste/hazard/web/html/catalyst.html (last visited July 27, 2023).

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

35. Defendant continues to use electrostatic precipitators to filter out particulates from its major emission streams despite recommendations from regulators, and demands from its neighbors, to utilize wet gas scrubbers at the Facility.

36. Wet gas scrubbers would be much more effective at controlling Defendant's particulate emissions, particularly during upset events, like the one that occurred at Defendant's Facility on November 24-25, 2022 that caused 20-24 tons of metal-laden spent catalyst material to be dispersed many miles away from its property and into the surrounding community as visible particulate emissions. However, Defendant has knowingly continued to operate with inadequate odor and dust mitigation control equipment and repeatedly spewed noxious emissions into Plaintiffs and putative class members' properties.

37. Defendant does not utilize the proper equipment, policies, and/or procedures necessary to contain the fugitive odors or dust created at the Facility.

### Defendant's Noxious Emissions

38. Due to Defendant's inadequate efforts to prevent Facility emissions from escaping into the adjacent residential neighborhood, on frequent, discrete, recurrent, and continuing occasions too numerous to list individually, Plaintiffs' properties have been and continue to be physically invaded by noxious odors and dust from Defendant's Facility.

39. Due to Defendant's negligent and intentional actions, and inadequate efforts to prevent its noxious emissions from escaping into the adjacent residential

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

neighborhood through the ambient air, Plaintiffs' properties have been and continue to be physically invaded by noxious odors and dust.

40.    The fugitive dust created at Defendant's facility is emitted into the surrounding community, blanketing both real and personal property.

41.    Defendant has failed to follow proper policies, practices, and procedures to prevent the off-site emission of odors and fugitive dust.

42.    The odors and dust which entered into and settled onto Plaintiffs' properties originated from Defendant's Facility, as a result of inadequate, improper, and/or negligent operation and maintenance of its refinery and its associated odor, dust, and wastewater control systems.

43.    The noxious odor and dust emissions caused by Defendant's Facility have been and continue to be dispersed across public and private land in the proposed class area.

44.    The dust and particulate emissions from Defendant's Facility are tangible, physical, and visible to the naked eye and have entered into and settled onto Plaintiffs' and class members' real and personal property on occasions too numerous to list individually.

45.    Defendant's Facility and its noxious odor emissions have been the subject of frequent and persistent complaints from residents in the nearby residential area.

46.    There are thousands of residential households located within two miles of the Facility.

CLASS ACTION COMPLAINT

47.    Multiple households within the proposed Class Area have contacted Plaintiffs' counsel documenting the noxious odors they attribute to the Defendant's Facility.

48.    Below is a small sampling of the factual allegations made by Plaintiffs and putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the odor and dust emissions, which have caused injury and damages to neighboring private properties:

a.    Plaintiff Joseph Piscitelli reported that he suffered from a massive fallout of dust from Defendant's Facility on or around Thanksgiving of 2022. Plaintiff reported that because of the huge airborne fallout of dust, "[m]y property, plants, vegetables, and fruit trees were inundated with dust. My 1968 Dodge showcar was covered with the dust, on several occasions," including on multiple occasions in 2023. According to Mr. Piscitelli, "[t]he car's paint is now showing some kind of pitting in the surface. I complained to the refinery, and they did nothing. We removed lots of soil, and we were told not to eat vegetables, which we dug up." Defendant's noxious emissions are so severe that Mr. Piscitelli has experienced substantial physical discomfort.

b.    Plaintiff Lara Zanzucchi reported that she experiences dust and smoke that she attributes to Defendant's Facility. According to Ms. Zanzucchi, her "deck porch, [and] walkways need to be power washed." Because of Defendant's dust emissions, Ms. Zanzucchi has experienced damages to the exterior of paints, fixtures, and her plants. Defendant's noxious emissions are so severe that Ms. Zanzucchi has experienced substantial physical discomfort.

c.    Putative class member Jennifer Cassel reported that she experienced "dust/ashes in November and again on July 11th [2023]. Had to start garden all over again." Further, Ms. Cassel reported having to "wash cars, close up windows, throw away all garden food and soil and started all over."

d.    Putative class member Lorenzo Lagandaon reported that because of Defendant's noxious dust emissions "our cars were just washed and we noticed they were full of dust again, like some thick white substance."

CLASS ACTION COMPLAINT

49. Defendant's well documented pattern of failing to control its emissions is demonstrated by:

a. The BAAQMD, a state regulatory authority responsible for improving the air quality of the region, received at least 129 citizen complaints between August 10, 2020 and July 13, 2023 regarding odor, dust, smoke, soot, and/or other noxious emissions attributed to Defendant's Facility.

b. From June 17, 2021 through July 11, 2023, the BAAQMD issued at least 108 Notices of Violations ("NOV") to Defendant for operating the Facility in a non-compliant manner, including NOVs for odor and dust nuisance. These violations include, but are not limited to:

  i. On December 13, 2022, the BAAQMD issued Defendant NOVs for flaring events that "exceeded visible emissions standard" and "released visible emissions into nearby Martinez community."

  ii. On December 15, 2022, the BAAQMD issued Defendant a NOV for an "[a]ccidental release of spent catalyst from FCCU and COBs with fallout in Martinez community."

  iii. On January 5, 2023, the BAAQMD issued Defendant two NOVs due to Defendant's "[f]ailure to report Public Nuisance" relating to two other NOVs.

  iv. On January 9, 2023, the BAAQMD issued Defendant a NOV because "[t]ransfer of waste water treatment plant tanks released odors into nearby Martinez community."

  v. On February 2, 2023, the BAAQMD issued Defendant a NOV because a "[p]lume evaluation during fire showed excessive visible emissions." Another February 2, 2023 NOV was issued because an "[a]ccidental release of spent catalyst from FCCU/COBs with fallout in Martinez community."

  vi. On July 11, 2023, the BAAQMD issued Defendant a NOV because of an "[a]ccidental release of coke dust affected nearby Martinez community."

c. On November 24-25, 2022 (Thanksgiving), Defendant's Facility released an estimated 20-24 tons of uncontrolled spent catalyst into the Martinez community. Subsequent investigation by the BAAQMD determined that the Fluid Catalytic Cracking Unit experienced a unit upset on the night of

November 20, 2022. As a result, ***Defendant's electrostatic precipitators, were disabled for four days***, from November 21, 2022 to November 25, 2022. According to the BAAQMD, "[d]uring this period, there was no abatement control to prevent opacity excesses at the [Carbon Monoxide Boilers], and Air District Staff found that [Defendant] recorded 12 opacity excesses between November 24-25, 2022." As a result, Plaintiffs' homes, and the homes of class members, were inundated with massive quantities of uncontrolled, metal-laden dust, which settled in large quantities on their properties. Defendant failed to notify the public regarding this uncontrolled dust release, which spanned miles away from the Facility. Because of the uncontrolled, metal-laden dust release from Defendant's Facility, residents were warned by Contra Costa County health officials not to eat any produce grown in exposed gardens. Soil samples collected after the incident detected unusually high levels of metal in the spent catalyst, including aluminum, barium, chromium, nickel, vanadium, and zinc.[4]

d. As a result of Defendant's emission of noxious odor and dust emissions, there has been significant media attention concerning Defendant's problematic operations. Many of these reports included specific allegations of dust and fallout that invaded private residences and physically damaged private property. A small sampling of these reports included:

　　i. "It was like a white color, a heavy dust and it was really thick especially on the windows," Martinez resident Vicky Conway said. Conway asked, "What about my roof? What about my deck? What are you guys going to do about it?"[5]

　　ii. "Some sort of ash - and it was just coating your car? I went home and tried to get it off and it wouldn't come off with water," Martinez resident Steve Ranse said.[6]

　　iii. "This was going to be our big garden and I was going to have all kinds of tomatoes and zucchini and cucumbers and all kinds of stuff," said Martinez resident Heidi Taylor. "The tomato is probably seriously poisonous tomatoes," said Taylor. "I am afraid to touch it, honestly." According to Ms. Taylor, the dust "was everywhere. It

---

[4] https://ccc.cchealth.org/press-releases/2023/0307-Safety-Advice-Near-Martinez-Refinery-Health-Advisory.pdf (last visited July 27, 2023).

[5] https://abc7news.com/martinez-refinery-flare-up-white-ash-free-car-wash-falling-on-cars/12504372/ (last visited July 26, 2023).

[6] *Id.*

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

was on our trash, it was on the house, it's on our plants[.]" "And it's this white ash and it just aerosolized and went everywhere. And I just think about it and it freaks me out."[7]

e.  As a result of Defendant's noxious emissions, a local organization called Healthy Martinez was formed, and its membership has swelled to more than 100 members who have actively petitioned the City to hold Defendant accountable for its adverse impacts on life and property in the Martinez community. Healthy Martinez has established 5 demands, including that Defendant "must come into compliance with emissions Rule 6-5 by installing a wet gas scrubber and making any other necessary improvements as per the independent investigation."[8]

f.  On repeated occasions, including but not limited to November 24, 2022, May 8, 2023, July 11, 2023, and July 22, 2023, Defendant has publicly admitted through its Facebook page that it was responsible for overwhelming off-site dust emission incidents that adversely impacted its residential neighbors.

50.  Defendant has failed to adequately collect, capture, mitigate, and control the odor and dust emissions produced by its refinery operations and has otherwise failed to prevent odors and dust from the Facility from invading the homes and property of Plaintiffs and the Class.

51.  A properly designed, operated, maintained, and managed oil refinery like Defendant's will collect, capture, mitigate, and destroy odorous compounds and particulate matter in order to prevent noxious emissions from invading the surrounding community.

52.  Defendant is required to control its noxious odor and dust emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates odor and dust emissions so as to prevent them from

---

[7] https://www.cbsnews.com/sanfrancisco/news/martinez-refinery-chemicals-catalyst-release/ (last visited July 27, 2023).
[8] https://www.healthymartinez.org/5-demands-1 (last visited July 27, 2023).

CLASS ACTION COMPLAINT

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

escaping into the ambient air surrounding the Facility and implementing other reasonably available odor and dust mitigation, elimination, and control systems at the Facility.

53.     Specifically, BAAQMD Regulation 1-301 prohibits the Facility from operating in a manner that constitutes a public nuisance by "discharg[ing] from any source whatsoever such quantities of air contaminants or other material which cause injury, detriment, nuisance or annoyance to any considerable number of persons or the public; or which endangers the comfort, repose, health or safety of any such persons or the public, or which causes, or has a natural tendency to cause, injury or damages to business or property."

54.     Since December 13, 2022, the BAAQMD has issued at least 5 separate and distinct NOVs to Defendant for violations relating to BAAQMD Regulation 1-301.

55.     As evidenced by the litany of NOVs in 2022 and 2023 alone, Defendant has improperly and/or negligently constructed, designed, operated, and/or maintained the Facility in violation of both its permits and the common law property rights of neighboring residents.

56.     Defendant has failed to install and maintain adequate technology, policies, and procedures to properly control its emissions of noxious odors and dust from its Facility, including but not limited to the following:

    a.    Failed to install and implement adequate odor mitigation technologies and procedures;

    b.    Failed to install and implement adequate dust mitigation technologies and procedures, including, but not limited to, by replacing its electrostatic precipitator with wet gas scrubbers;

c.   Failed to install and implement adequate wastewater treatment systems to prevent noxious off-site odors.

d.   Failed to implement adequate policies and procedures for controlling and mitigating off-site odor and dust emissions.

57.   In violation of its common law duties, Defendant's Facility has emitted, and continues to emit, noxious odors and dust that are detectable outside the bounds of its property.

58.   The Facility has emitted noxious odors and dust that have caused negative impacts to its neighbors in the proposed Class Area.

59.   The noxious odors and dust emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damages.

60.   The invasion of Plaintiffs' property and that of the Class by noxious odor and dust emissions has adversely impacted the value of that property and has interfered with the use and enjoyment of that property, resulting in damages.

61.   The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging.

62.   Plaintiffs and the Class are a limited subset of individuals in Contra Costa County, and the Class Area, that includes only owner/occupants and renters of residential property who live within the proposed Class Area and fit within the preliminary Class Definition.

CLASS ACTION COMPLAINT

63.     Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced the noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class area have not suffered injury or damages of the same kind, in the form of negatively impacted property values, loss of exclusive possession of their properties, and/or loss of use and enjoyment of their private properties.

64.     Defendant intentionally, recklessly, willfully, and/or negligently failed to properly design, maintain, operate, and/or construct the Facility, and caused the invasion of Plaintiffs' properties by noxious odors and dust on intermittent and reoccurring dates too numerous to individually recount.

65.     Defendant's noxious emissions are continuing; Defendant has failed to cease the noxious emissions, despite the emissions being abatable with reasonable care and diligence.

66.     The invasion of Plaintiffs' property and that of the Class by noxious odors and dust has adversely impacted the value of those properties and has interfered with the use and enjoyment of those properties, resulting in damages well in excess of $5,000,000.

## CLASS ALLEGATIONS

**A. Definition of the Class**

67.     Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of

Civil Procedure 23.  Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within two (2) miles of the Facility's property boundary between the date three (3) years predating the filing of this Complaint and the present.**

68.     The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

69.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Federal Rule of Civil Procedure in that:

a.     The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

b.     There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

c.     Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

d.     The claims of the representative party are typical of the claims of the Class;

e.     A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

f.     The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

g.     There are no unusual difficulties foreseen in the management of this class action; and

CLASS ACTION COMPLAINT

h. Plaintiffs, whose claims are typical of those of the Class, will zealously and adequately represent the Class through their experienced counsel.

## B. Numerosity

70. The approximate number of residential households within the Class Area is over 10,000.

71. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

## C. Commonality

72. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

a. Whether and how Defendant negligently and knowingly failed to reasonably design, construct, maintain, and/or operate the Facility to prevent off-site odor and dust emissions;

b. Whether Defendant owed any duties to Plaintiffs;

c. Which duties Defendant owed to Plaintiffs;

d. Which steps Defendant has and has not taken in order to control the emission of noxious odors and dust through the construction, design, operation, and maintenance of its Facility;

e. Whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

f. Whether it was reasonably foreseeable that Defendant's failure to properly construct, operate, and maintain the Facility would result in an invasion of Plaintiffs' property interests;

g. Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and

h. The proper measure of damages incurred by Plaintiffs and the Class.

**D. Typicality**

73.     Plaintiffs have the same interests in this matter as all the other members of the Class and his claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

74.     The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construct, design, operate, and maintain the Facility and its operations.

75.     Class Members have similar injuries to the Plaintiffs as a result of the invasion of their properties by Defendant's release of noxious odors and dust, causing damages to their properties.

**E. Adequacy of Representation**

76.     Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

77.     Plaintiffs have retained counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiffs' Counsel will vigorously prosecute this action and will

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**F. Class Treatment Is the Superior Method of Adjudication**

78.    A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a.    Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b.    Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c.    The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

d.    The proposed class action is manageable.

79.    The prosecution of separate actions by or against individual members of the Class  would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect  to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

80.    Notice can be provided to members of the Class by U.S. Mail and/or publication.

CLASS ACTION COMPLAINT

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

81.     Class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can commonly exercise their rights.

## I.     CAUSES OF ACTION I AND II

## **PUBLIC AND PRIVATE NUISANCE**

82.     Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

83.     The noxious odors which entered Plaintiffs' properties originated from the Facility constructed, designed, maintained and/or operated by Defendant.

84.     The noxious emissions were created as a result of intentional and affirmative acts taken by the Defendant on the offending property.

85.     The odors and dust invading Plaintiffs' and the Class' properties are indecent and/or offensive to the senses, and obstruct the free use of their property so as to interfere with the comfortable enjoyment of life and/or property, including in but not limited to the following ways:

a.  causing Plaintiffs to remain inside their homes and forego use of their yards;

b.  causing Plaintiffs to keep doors and windows closed when weather conditions otherwise would not so require;

c.  causing Plaintiffs to spend considerable time, and incur costs, cleaning and repairing the dust deposition on their homes and personal property;

d.  causing Plaintiffs' real and personal property to be physically damaged by the noxious dust emissions that entered and settled onto their property in substantial quantities, including but not limited to through chipping, pitting, sedimentation, corrosion, destruction, and waste to gardens, lawns, soil, and other flora, among others;

e. causing Plaintiffs to be deprived of the exclusive possession of their properties; and

f. causing Plaintiffs annoyance, discomfort, embarrassment, and reluctance to invite guests to their homes.

86. Defendant owed and continues to owe a duty to Plaintiffs and the putative Class to take reasonable steps to prevent and/or abate the interference with common public rights and/or the invasion of the private interests of the Plaintiffs.

87. By designing and then failing to reasonably repair, maintain, and/or operate its Facility, Defendant has negligently created an unreasonable risk of foreseeable harm by causing the invasion of Plaintiffs' properties by noxious odors and pollutants.

88. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiffs have suffered injuries and damages to property including through interference with the use and enjoyment of private property, loss of property values, and adverse impacts on property values.

89. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging.

90. Plaintiffs and the Class are a limited subset of individuals in Contra Costa County, and the Class Area, that includes only owner/occupants and renters of residential property who live within the proposed Class Area and fit within the Class Definition.

91. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the noxious odors emitted from the Facility into public spaces;

however, unlike Plaintiffs and the Class, members of the public who are outside of the Class area have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

92.    The injuries and damages suffered by Plaintiffs are specially injurious to them given the impact to their property, as compared with the general public impacted by the odors, whose injuries do not include private property damage.

93.    Plaintiffs did not consent for noxious odors or dust to enter into their land and properties.

94.    The nuisance conditions created by Defendant are abatable with reasonable care, effort, and diligence.

95.    The nuisance conditions created by Defendant are continuing, as they arise intermittently and can be abated with reasonable diligence.

96.    By causing noxious odors and dust produced and controlled by Defendant's Facility to physically invade Plaintiffs' land and property, Defendant intentionally, recklessly, and/or negligently created a nuisance which substantially and unreasonably interfered with Plaintiffs' comfortable use and enjoyment of his property and caused the value of said property to be adversely impacted.

97.    Whatever social utility Defendant's operations provide is outweighed by the harm suffered by the Plaintiffs and the putative class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial relative loss in the value of their properties.

CLASS ACTION COMPLAINT

98.     Defendant's substantial and unreasonable interference with Plaintiffs' use and enjoyment of their properties and adverse impacts on property values constitutes a nuisance for which Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory and injunctive relief.

## II. CAUSE OF ACTION III

## NEGLIGENCE

99.     Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

100.     On occasions too numerous to mention, Defendant negligently and improperly constructed, designed, maintained and/or operated its Facility, allowing excessive fugitive emissions to escape.

101.     Defendant owed and continues to owe a duty to Plaintiffs and the putative class, as neighboring residents with private property interests, to prevent and abate the interference with, and the invasion of, their private property interests.

102.     By failing to properly construct, maintain and/or operate its Facility, and follow proper air pollution control techniques, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade and damage Plaintiffs' property.

103.     As a direct and proximate result of Defendant's negligence in constructing, maintaining, repairing, and/or operating the Facility, Plaintiffs' properties were, and continue to be, physically invaded by noxious odors and dust on occasions too numerous to list individually.

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

104.    As a further direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered injuries to their properties as alleged herein, and as a result of the physical invasion of their private properties by noxious odors and dust.

105.    As a result of the injuries to Plaintiffs' properties, Plaintiffs have suffered damages that include, but are not limited to, adverse impacts on the value of Plaintiffs' properties, loss of full property value, physical damage to real and personal property, including but not limited to through chipping, pitting, sedimentation, corrosion, destruction, and waste to gardens, lawns, soil, and other flora, among others, and the interference with the right of use and enjoyment of Plaintiffs' property.

106.    By failing to construct, maintain and/or operate its Facility, Defendant has caused the invasion of Plaintiffs' property by noxious odors and dust.

107.    Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, designed, maintained and/or operated its Facility and knew, or should have known upon reasonable inspection that such actions would cause, and were causing Plaintiffs' properties to be invaded by noxious odors and dust.

108.    As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' residences and personal property have been and continue to be physically invaded by noxious odors and dust.

109.    Defendant's conduct in causing noxious odors to invade Plaintiffs' properties has caused damages to Plaintiffs' property, as alleged herein, and Plaintiffs

CLASS ACTION COMPLAINT

seek all damages allowed by law, including, but not limited to, compensatory and injunctive relief.

## III. CAUSE OF ACTION IV

## <u>TRESSPASS</u>

110.    Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

111.    Plaintiffs, as owner/occupants and/or renters of their real property, exercise exclusive ownership and control over their property.

112.    Because of Defendant's intentional and/or negligent conduct in causing Plaintiffs' properties to be invaded by fugitive dust from its Facility has interfered with Plaintiffs' and Class Members' right of exclusive possession of their real and personal property.

113.    Defendant intentionally, recklessly and/or negligently emitted odors and fugitive dust onto the property of Plaintiffs.

114.    Plaintiffs did not consent to the Defendant's emission of odors and fugitive dust onto their property.

115.    As a result of Defendant's emission of odors and fugitive dust onto Plaintiffs' property, Plaintiffs suffered harm, including, but not limited to:

a.    causing Plaintiffs to remain inside their homes and forego use of their yards;

b.    causing Plaintiffs to keep doors and windows closed when weather conditions otherwise would not so require;

c.    causing Plaintiffs annoyance, discomfort, embarrassment, and reluctance to invite guests to their homes;

CLASS ACTION COMPLAINT

d.    blanketing Plaintiffs' homes, yards and personal property with dust which requires unnecessary and repetitive cleaning and associated costs;

e.    causing physical damage to Plaintiffs' real and personal property, including but not limited to through chipping, pitting, sedimentation, corrosion, destruction, and waste to gardens, lawns, soil, and other flora, among others; and

f.    adverse impacts on the value of their property.

116.    As stated in greater detail above, Defendant has been issued numerous violations regarding its conduct in operating its facility. Defendant's conduct, as outlined above, was a substantial factor in causing the emission of noxious odors and fugitive dust into Plaintiffs' properties and causing the trespass that resulted therefrom.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.    Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B.    Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.    Judgment in favor of Plaintiffs and the Class Members and against Defendant;

D.    An Order holding that the entrance of the aforementioned noxious odors and dust upon Plaintiffs' properties constituted a nuisance;

E.    An Order holding that Defendant was negligent in causing property damages to Plaintiffs and the Class, causing damages to property;

CLASS ACTION COMPLAINT

F.    An Order holding that the invasion of the aforementioned noxious odors and dust upon Plaintiffs' properties constituted a trespass;

G.    An award, to Plaintiffs and the Class, of compensatory damages, including pre-judgment and post-judgment interest thereupon;

H.    An award to Plaintiffs and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations;

I.    An award of attorney fees and costs, as permitted by law or the Court; and

J.    Such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues raised in this Complaint.

Dated:    August 16, 2023

ARIAS SANGUINETTI WANG
& TORRIJOS LLP

By:    _/s/ Mike Arias_
MIKE ARIAS, ESQ.
ARNOLD C. WANG, ESQ.
M. ANTHONY JENKINS, ESQ.

**LIDDLE SHEETS COULSON P.C.**

STEVEN D. LIDDLE, ESQ.*
LAURA L. SHEETS, ESQ.*
MATTHEW Z. ROBB, ESQ.*
*pro hac vice to be submitted*

*Attorneys for the Plaintiffs and Putative Class*